This is a suit by Charles A. Bourgeois, a real estate agent, against his principal for $739.99, the balance alleged to be due him as a commission under a contract whereby he undertook to procure for his employer a tenant of certain real estate belonging to his principal under a ten year lease. The defendant, Arthur L. Jung, though admitting the employment of plaintiff and the procurement of the tenant for his property, denies owing him any sum whatever because of the alleged failure of consideration of the contract of employment.
There was judgment below in plaintiff's favor as prayed for and defendant has appealed.
The facts are not in dispute and may be stated as follows: Charles Bourgeois entered into a written contract of employment with Arthur L. Jung in the year 1932, whereby he undertook to secure a tenant for Jung's property under a ten year lease for a commission of $1,479.98, one-half of which was to be paid at the time the lease was confected and the remainder on August 1st, 1937. He succeeded in obtaining the Service Laundry, Inc., as the tenant and that company was subsequently accepted by Jung after insisting upon the deposit by it of $3,600 in advance, as security for the payment of the rent, which the tenant agreed to do and subsequently made the deposit. After occupying the leased premises for about three years, the Service Laundry, Inc., defaulted in the payment of its rent and Jung obtained possession of the leased property by means of writs of provisional seizure and ejectment. The property then remained vacant for more than four months but was subsequently rented for a sum much less than the laundry had agreed to pay.
According to Jung's testimony, instead of the lease paying him $32,000 for the ten year term, he realized only $9,400 and was obliged to pay $400 as attorney's fees in addition. He takes the position that the consideration for his contract with Bourgeois was the payment to him of the rent which the Service Laundry, Inc., agreed to pay him and that since the Service Laundry, Inc., defaulted, and, as a result, he received much less than the lease called for, Bourgeois is not entitled to any further payment on account of his commission.
The contract between Jung and Bourgeois was in writing, and we quote the following with reference to the payment of the commission:
"Lessor further agrees to pay to Charles A. Bourgeois, Agent, a commission amounting to One Thousand Four Hundred Seventy Nine Dollars Ninety Eight Cents ($1479.98) as commission on the above lease, in the following manner: Seven Hundred Thirty-Nine Dollars Ninety Nine Cents ($739.99) at the time this lease is executed and bond or cash security is furnished, and the balance of Seven Hundred Thirty Nine Dollars Ninety Nine Cents ($739.99) to be paid on August 1st, 1937."
It will be noted that the agreement to pay the second half of the commission is unconditional and unqualified and amounts to a definite agreement to pay that installment on August 1st, 1937. Nevertheless defendant's counsel contends that however definite the agreement and however certain its terms, the consideration failed, and, therefore, under Article 2045, R.C.C., the obligation to pay the commission was extinguished.
The case of Onorato v. Maestri, 173 La. 375, 137 So. 67, and that of Avery v. Helwick, La.App., 166 So. 507, are confidently relied upon by counsel.
The Maestri case involved an agreement to pay an agent's commission out of the monthly rent beginning with the eighth month of the lease. The lessee defaulted before the eighth month and the lessor, taking advantage of a clause in the lease which permitted its cancellation under the circumstances, acted accordingly. After the original lease had been rescinded the property was leased to the receiver of the original tenant upon the same terms and conditions. The defendant in that case took the position that because of the dissolution of the lease which the agent had negotiated prior to the time the installments of rent dedicated to the payment of the broker became due, no *Page 395 
commission could be collected. The court, however, held that since the lease had been rescinded by the lessor, thus preventing the accomplishment of the condition upon which the payment of his brokerage depended, defendants could not escape their obligation to pay the commission, saying [173 La. 375, 137 So. 69]:
"Unquestionably, defendants had a legal right to rescind the lease, upon the appointment of a receiver, as provided in that contract. Had they done so, and nothing more, or had they rescinded it and leased the premises to some third person, we should be inclined to hold that plaintiff could not recover, at least, to the extent of rents collected after the rendition of the judgment of rescission, as his contract for payment was dependent on the continuance of the lease until he received payment, through the collection of rents, during a specified period. However, when defendants virtually, immediately after the rendition of the judgment of rescission, released the property to the receiver, for the same rent, they, to all intents and purposes, reinstated the rescinded lease to the extent of the periods, named in the leases to the receiver, which cover all or most of the time in which plaintiff is interest. To permit defendants by this procedure to be relieved of their obligation to plaintiff would be to sanction the subjection of substantive rights to mere matters of form. This view finds support by analogy, in articles 1856 and 1857 of the Civil Code."
In the Avery case the broker negotiated the sale of a refrigerator belonging to Helwick under an agreement whereby he was to receive a commission payable out of certain chattel mortgage notes given to secure the purchase price. Shortly after the sale was made the buyer defaulted and a voluntary surrender of the refrigerator was made to Helwick, who cancelled the mortgage notes. This court in that case said [166 So. 508]:
"If Helwick had foreclosed on his chattel mortgage and obtained possession of the freezer as the adjudicatee at a public sale for $1,000 or less, assuming that the plaintiff's commission was dependent upon the payment of the purchase price, Avery could not have recovered the balance of his commission because Helwick would have exhausted all legal means of collecting the payments, out of which Avery was to be compensated."
In the instant case there was a specific agreement to pay Bourgeois a commission if he obtained a tenant satisfactory to Jung. One-half of the commission was paid and the remainder, for some reason, was made payable five years later. Bourgeois did not guarantee nor was his commission dependent upon the payment of the notes given by the tenant; as a matter of fact, Jung was apparently doubtful of the financial responsibility of the proposed tenant and insisted upon its posting $3,600 as security for the payment of the rent. If there had been any intention to make Bourgeois' commission, or any part of it, dependent upon the payment of the rent notes, it would have been an easy matter to have said so in the contract of employment.
We are of opinion that Bourgeois had executed his undertaking under that agreement when he produced a tenant who was willing to lease the property on the terms imposed by its owner. The consideration for the contract was satisfied.
Article 1898 of the Revised Civil Code, which reads as follows, is applicable here.
"Consideration existing at time contract made — Subsequent failure or destruction — Effect. — Where the consideration or cause of the contract really exists at the time of making it, but afterwards fails, it will not affect the contract, if all that was intended by the parties be carried into effect at the time. The destruction of property sold, after the sale is perfected, without the fault of the seller, is a case governed by this rule."
Our conclusion is that the judgment of the trial court was correct, consequently, and
For the reasons assigned it is affirmed.
Affirmed.
JANVIER, J., absent, takes no part. *Page 396